IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE MEYNE COMPANY, a division of BULLY & ANDREWS, LLC, an Illinois limited liability company, | ) ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | Case No. 10 C 3497 |
| EDWARD E. GILLEN COMPANY, a Wisconsin corporation, | ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Meyne Company filed a petition seeking confirmation of an arbitration award against Edward E. Gillen Company and has moved for an order granting the petition. In response, Gillen seeks an order vacating the award in part and modifying it in part. For the reasons stated below, the Court grants in part and denies in part both Meyne's and Gillen's motions.

**Procedural History**

The case concerns a construction project at Latin Middle School in Chicago. Meyne, the general contractor, alleged that Gillen, a subcontractor, breached their contract.

Under the subcontract, Gillen agreed to provide earth retention work in connection with the construction project. The subcontract contained a provision requiring arbitration of disputes.

After an evidentiary hearing, a panel of three arbitrators found that Gillen negligently caused a delay in the project and thus breached the subcontract. The panel held Gillen liable for damages of $2,163,369.08, including $648,970.37 that Meyne claimed it owed other subcontractors due to the delay (the "Subcontractor Claims"). The panel also found in favor of Gillen on its counterclaim in the amount of $380,040.61. The panel set this off against Meyne's award, resulting in a net award to Meyne of $1,783,328.47. The award also required Gillen to reimburse Meyne for $1,375 in expenses associated with the arbitration.

**Discussion**

In response to Meyne's petition to confirm the award in its entirety, Gillen asks the Court to vacate the Subcontractor Claims portion of the award. Gillen argues that Meyne's standard subcontract did not require it to reimburse its subcontractors for damages from delay, so any such payments Meyne made were voluntary. Gillen argues that it cannot be held liable for sums that Meyne paid voluntarily. In response, Meyne argues that the arbitrators appropriately and plausibly interpreted the subcontract to require Meyne to pay damages to its subcontractors for delay caused by Gillen.

Gillen's second contention concerns the arbitrators' decision to set off each party's individual awards, resulting in a net award for Meyne. Gillen argues that the setoff will cause unnecessary insurance issues that negatively affect Gillen. It asks the Court to modify the award so that it includes separate awards for each party. In response, Meyne argues that the arbitrators had the authority to set off the awards and that the Court should not substitute its will for that of the arbitrators.

2

1.   **Subcontractor claims**

Under section 9 of the Federal Arbitration Act ("FAA"),

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Section 10(a) provides the grounds upon which a court can vacate an arbitration award. Gillen asks the Court to vacate the Subcontract Claims portion of the arbitrators' award pursuant to section 10(a)(4) on the ground that the arbitrators exceeded their powers. *See* 9 U.S.C. § 10(a)(4).

"[J]udicial review of arbitration awards is extremely limited." *Chameleon Dental Products v. Jackson*, 925 F.2d 223, 225 (7th Cir. 1991). An arbitrator exceeds her powers if she ignores the contract she is interpreting. *First Commercial Financial Group v. Baghdoian*, 812 F. Supp. 837, 839 (N.D. Ill. 1993). In deciding whether to confirm or vacate an award, however, courts only "determine whether or not the arbitrator interpreted the agreement, not if the arbitrators' interpretation of the agreement is correct." *Chicago & Northwestern Transp. Co. v. United Transp. Union*, 905 F.2d 171, 173 (7th Cir. 1990). An award can be confirmed even if it contains gross legal and factual errors. *Gingiss Intern., Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995). To confirm an arbitration award, a court need only find some "possible interpretive route" that leads to the award. *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008).

An arbitrator also exceeds his power if he "deliberately disregards what he knows

to be the law." *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). "[M]ere error in the interpretation of law," however, is not enough to upset an arbitration award. *Id.* at 1256.

Gillen's first argument for vacating the Subcontractor Claims award is rooted in section 17.6 of the Subcontract, entitled "Delay Damages," which states:

> Subcontractor agrees that if Subcontractor. . . shall delay progress of the Work or any other work on the entire Project, so as to cause any damages or penalty for which General Contractor *shall* become liable, it shall . . . reimburse General Contractor for any such amount.

Subcontract § 17.6 (emphasis added). The use of the word "shall" in section 17.6 indicates that Gillen may be held liable only for those damages that Meyne was required to pay, not payments that Meyne voluntarily undertook.

Gillen argues that under section 17.3 of the Subcontract, entitled "Delays," Meyne was not responsible to pay damages to its subcontractors resulting from delays. This provision states:

> Subcontractor acknowledges that . . . the Project may not be completed within the time presently contemplated in the Contract Documents and that, because of such delays, Subcontractor may incur substantial additional expenses, costs and liabilities . . . In the event that . . . the Project cannot be completed by the scheduled completion date, . . . Subcontractor agrees . . . that . . . neither General Contractor, Owner nor Architect shall be liable for any increase in cost of wages, material, services or any other costs and damages incurred by Subcontractor during such period of delay.

Subcontract § 17.3. Meyne concedes that this provision appears in all of its subcontracts. Gillen argues that this provision amounts to a waiver of any possible right a subcontractor may have to recoup delay expenses. Thus, Gillen contends, any payments Meyne made to subcontractors for damages due to

4

delay had to have been made voluntarily. Because section 17.6 makes Gillen liable only for damages for which Meyne *shall* become liable, Gillen argues, it cannot be held liable under the contract for Meyne's voluntary payments.

Gillen further contends that no other sections of the Subcontract, including section 8.6, trump sections 17.3 and 17.6 given the facts of this case. Section 8.6, entitled "Work Stoppage," states the following:

> Contractor may, *by written order*, direct subcontractors to stop, suspend, or delay all or any part of the Work indefinitely or for such period of time as may be determined by General Contractor . . . If such Work Stoppage unreasonably delays the progress of Work and causes additional expense or loss to Subcontractor in the performance of Work not due in part to the fault or negligence of Subcontractor, *an equitable adjustment in the Subcontractor Price and time for performance shall be made* in accordance with the agreement of the parties or by application of Article 22 and *the Subcontract shall be modified in writing accordingly*; provided however, that . . . *no claim may be asserted by Subcontractor for an adjustment hereunder unless Subcontractor notifies General Contractor in writing of such claim within seven days of Subcontractor's receipt of the written order of Work Stoppage* . . .

Subcontract § 8.6 (emphasis added).

Gillen implicitly concedes that section 8.6 entitles subcontractors to compensation for delay costs in an appropriate case but argues that the provision does not apply in this case. Specifically, Gillen asserts that section 8.6 contains three prerequisites, none of which existed here: written modification of the subcontract to adjust the price; issuance of a written order by Meyne; and a response by the subcontractors within seven days.

At the arbitration hearing, Meyne offered evidence of written change orders and other documents issued to subcontractors to increase their prices because of the Gillen-caused suspension. Gillen argues that under section 10.6, which also applies to

5

change orders, the change orders that Meyne has cited did not obligate it to make delay payments to the subcontractors. Section 10.6 provides that a subcontractor is not entitled to compensation for a change order in an amount greater than what Meyne received from the property owner – which was not the case in connection with the delay payments. Section 10.6 also provides that a change order is null and void if the work was already within the scope of the subcontract, which Gillen argues is the case here.

In sum, Gillen argues, the change orders are not covered by section 8.6 and were rendered void (or at least did not entitle the subcontractors to more money) under section 10.6. For these reasons, Gillen argues, sections 17.3 and 17.6 apply, and Meyne's subcontractors had no right to damages for delay. As a result, Gillen contends, the arbitrators could have made their award on the Subcontractor Claims only by ignoring sections 17.3 and 17.6.

Gillen's argument is based on a plausible interpretation of the Subcontract. But in considering whether to enforce the arbitrators' award, the existence of a plausible (or even better) interpretation other than the one the arbitrators used is not controlling. Rather, the Court need only find the existence of a "possible interpretive route" that supports the arbitrators' award. *See Prostyakov*, 513 F.3d at 723. Section 8.6 of the Subcontract provides that route. Specifically, the arbitrators could have found that the written orders that Meyne provided during the hearing fulfilled section 8.6's requirements of written modification and a written order by Meyne. With regard to the third requirement of section 8.6 – a response by the subcontractor within seven days – the arbitrators could have found that this was unnecessary: Meyne could have informed the subcontractors that it intended to honor section 8.6 by paying additional

6

expenses caused by the delay without requiring a written response by the subcontractors. Meyne has provided evidence that section 8.6 was discussed at the arbitration hearing, supporting its contention that the arbitrators based their award on that provision.

Meyne has also provided another interpretive route the arbitrators could have relied upon in making their award on the Subcontractor Claims. Illinois courts have recognized exceptions to "no damages for delay" clauses like the one found in section 17.3. *See, e.g., J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 276-77, 642 N.E.2d 1215, 1221(1994); *John Burns Constr. Co. v. City of Chicago*, 234 Ill. App. 3d 1027, 1033, 601 N.E.2d 1024, 1028 (1992). Whether or not Gillen believes that these exceptions should apply, the arbitrators could have found one or more of them did.

Gillen also argues that the arbitrators' decision on the Subcontractor Claims ignores established law. Specifically, Gillen contends the arbitrators disregarded Illinois law precluding a non-breaching party from unnecessarily enhancing its damages and that they awarded damages not within the reasonable contemplation of the parties to the Subcontract. This argument is premised on the merits of Gillen's previous argument, which the Court has rejected. First, Meyne's payments to its subcontractors could be considered an unnecessary enhancement only if the payments were voluntary. The Court has already found that the arbitrators could have concluded that Meyne's subcontracts required the payments. Gillen's contention that the Subcontractor Awards were not within the reasonable contemplation of the parties fails for the same reason: if Meyne's subcontracts required delay payments in this situation, the payments were

7

reasonably contemplated.

In sum, Gillen has failed to show a basis to vacate the arbitrators' award in Meyne's favor on the Subcontractor Claims. The Court therefore confirms the award to that extent.

**2. Set-off of awards**

Gillen also asks the Court to modify the Award by eliminating the setoff of the award in its favor against the award in Meyne's favor. Modification of an arbitration award is governed by section 11 of the FAA, which permits a court to modify or correct an award that (among other things) "is imperfect in matter of form not affecting the merits of the controversy. . . . The order may modify and correct the award, so as to affect the intent thereof and promote justice between the parties." 9 U.S.C. § 11.

As indicated earlier, Gillen argues that the arbitrators' decision to net the two awards has caused "unnecessary insurance coverage issues," rendering the award imperfect in matter of form. Gillen asserts that this modification would not affect the merits of the Award, and thus falls within the ambit of section 11(c).

The only case cited by Gillen, *Roadmaster Corp. v. Production and Maintenance Employees' Local 504*, 851 F.2d 886 (7th Cir. 1988), is inapposite. In that case, an arbitrator applied substantive law outside of the collective bargaining agreement he was interpreting. The court vacated the award and did not simply modify it due to "imperfect form" or anything of the sort. *Id.* at 889. Meyne has also cited Illinois law permitting the netting of judgments on claims and counterclaims, but that does not mean that this is required or that section 11(c) does not apply. Meyne has provided no practical

justification for why the Court should not modify the Award as Gillen argues.

Though there is not much law concerning the meaning or application of section 11(c), that provision cannot be mere surplusage within the FAA. The arbitration award in this case would seem to be a prime example of an award that is "imperfect as to form" rather than in substance. Elimination of the the setoff would not require the Court to reconsider the merits, and it would not affect the amount of damages awarded to either party. Rather, it would simply modify the form of the award to avoid unjust consequences.

For these reasons, the Court grants Gillen's request to modify the Award to eliminate the setoff.

**3.     Other matters**

Meyne asks the court to strike the Huntley affidavit filed by Gillen or for permission to file the Nelson affidavit in opposition. Huntley's affidavit states that "[t]here were no subcontracts which were modified in writing pursuant to Section 8.6 of the subcontracts placed into evidence at the arbitration." Gillen opposes Meyne's motion to strike and asks the Court to deem admitted that Meyne did not modify its subcontracts under section 8.6 and to strike certain statements in Nelson's affidavit.

The Court denies Gillen's request to deem admitted that Meyne did not modify its subcontracts under section 8.6. The Court's task is not to determine whether Meyne modified its subcontracts correctly but rather to decide whether the arbitrators interpreted the parties' contract when answering that question. *Chicago & Northwestern Transp. Co*, 905 F.2d at 173.

As indicated earlier, Huntley's affidavit says that "[t]here were no subcontracts

which were modified in writing pursuant to section 8.6 of the subcontracts placed into evidence at the arbitration." If – as appears to be the case – GIllen intends this to mean that Meyne did not modify its subcontracts in the manner required by section 8.6, it amounts to a rehash of the argument that the Court has already rejected. Thus the Court need not deal with the motion to strike.

Meyne sought in the alternative to admit Nelson's affidavit. Because the affidavit is unnecessary to the outcome, the Court terminates Meyne's motion as moot.

## Conclusion

For the reasons stated above, the Court grants in part petitioner's petition to confirm the award [docket no. 1] and grants in part respondent's motion to modify the award [docket no. 9]. The Court also terminates plaintiff's motion to strike [docket no. 17]. The Court directs the Clerk to enter judgment as follows: the arbitration award is modified to eliminate the setoff of the opposing awards and is confirmed as thereby modified.

       /s Matthew F. Kennelly  
       MATTHEW F. KENNELLY  
       United States District Judge

Date: October 27, 2010